Good morning, your honors. Joe Gavin on behalf of the plaintiff, Spectrum Health. The district court erred in this case quite simply because it over read the very narrow explanation overview issued by the plan. I'd like to begin with the statute because I think it's instructive. Section 1133 speaks to requiring in an ERISA case a plan administrator to provide adequate notice to any participant or beneficiary whose claim has been denied, setting forth the specific reasons for the denial, written in a manner to be calculated to be understood by the participant. As I deconstruct that, I see three essential issues. Was there adequate notice with a specific reason calculated in a manner to be understood by, in this case, Mr. Garuska? In this case, we believe that the district court erred, including that the EOR at issue, the explanation overview, provided such adequate notice in a manner calculated to be understood by him. The EOR had approximately one sentence explanation as to why the claim here was denied, saying the service, medicine, or supply appears to be experimental or investigational as defined by the plan. That was the sum and substance. When you strip away all of the different versions that were submitted to the district court, that was the sum and substance of the communication provided about why the plan was refusing to pay this particular service. Yes. So their basic argument is you miscoded it. That is correct, Your Honor. Their basic argument, Your Honor, is that this was sufficient to communicate exactly why the claim was denied. And isn't that, they're claiming, aren't they, that that's dependent upon the fact that you had already coded it that way? And that's, is that the basis of why it's sufficient? That came out later on. That's correct, Your Honor. But it only came out after there was correspondence issued by Spectrum in April and May of 2016. It wasn't until that initial correspondence in, I think it was May 23rd of 2016, where the plan actually articulated, here's why. This was a coding issue from our perspective. And so the initial explanation of review said nothing about any kind of coding error problem. It just simply said, this appears to be experimental or investigational. Who did code it? Did the hospital code it? Hospital did code it, Your Honor. And did that coding turn out to be correct? I mean, I hate to, you know, get to the end and ruin the surprise, but was this an experimental? The answer is, Your Honor, no. It was not experimental or investigational as defined by the plan. However, the hospital did incorrectly code the claim on the uniform billing. I'm sure the Court is aware, in the ordinary course of these transactions, a uniform billing or UB is generated by a provider and submitted to a plan. And then that UB will have specific coding on it, identifying various revenue codes. And that's really to be compliant with Medicare rules. But it's the industry standard. And in any event, this particular claim, which encompassed not only, it encompassed a variety of services, approximately $470,000 in medical care. One of the codes on the UB, specifically, as defendants point out correctly in their brief, said that it was listed as an FDA investigational device. That was incorrect. It was an error on the original UB. And that was clarified subsequently in claim processing. What had actually happened in this case, Mr. Garuska presents for, essentially, he's got a failing heart. And he needs a bridge to cardiac, a bridge to transplant of his heart. So what his surgeons determined is that he can use what's called a ventricular assist device. And they're going to implant this into his heart to assist his heart in the pumping process. Now, traditionally, those devices were implanted via sonotomy. Essentially, they open up the ribcage. And what they determined is that it's actually better for a patient, in terms of their prognosis for recovery, to implant it under the ribcage. To go up, around, and avoid reopening the sternum in the event of a future transplant. Well, unfortunately, as part of this claim, the HVAD, or the system itself, there's no dispute that that is a valid device that is used all the time. But the method, the particular method of implantation, by using this thoracotomy approach, was what was new, so to speak. And so that is what caused the coding error in the UB. The fact that it was implanted in that method, as opposed to the device itself. But there's not a dispute that the device itself is not investigational. That is correct. The parties don't dispute that. There's no dispute that I'm aware of, Your Honor. I mean, the only dispute that we've seen from the plan is they say, well, you coded it improperly, therefore it's denied. Now, of course, when we walk through the language of the plan, there's nothing that speaks to coding whatsoever. We actually have to analyze, under very four specific criteria, whether or not a particular service, supply, or device satisfies one of those criteria to be considered experimental or investigational. And those criteria are set forth in our papers, and candidly, as you can see from your review of the EOB, they're nowhere to be referenced or found. And I think this is the key point about why the specific reason or the adequate notice is so critical in a case like this. The whole concept, the basic concept that ERISA would support here is that the essential purpose of this statute is to notify a participant or beneficiary of the specific reasons so that they can have a meaningful ability and opportunity to appeal and challenge that denial. If someone like Mr. Garuska is left to guess or speculate about why the plan is concluding a particular service or supply is experimental, then he or anyone can't have a meaningful review of that denial or a meaningful opportunity to challenge that denial. And we think that is adequately supported throughout this court's case law, the Clark and O'Clock case, certainly the McCarthy v. National City case, all speak to this concept of adequacy of the ability to appeal based upon information that's communicated to allow it to be challenged. If the plan doesn't pay this amount of the bill, can Spectrum seek that payment from Mr. Garuska? Legally, Spectrum could, but I don't know that Spectrum would. Spectrum has not undertaken any efforts to directly go after Mr. Garuska for this balance. That's not why we're here. And there's no agreement that you won't? As your Honor is asking me to make that commitment on the record right now, I don't know that I can make that representation. All you have to do is say either you have agreed or you haven't. Not to this date. I can tell you that I have represented Spectrum for a number of years, and in a situation like this, whenever we have pursued a claim... Well, at base, the mistake was Spectrum's. I would agree in one respect. The initial... The initial coding error was absolutely Spectrum's, Your Honor. I will not dispute that. But I think that question, I would respectfully urge, obscures the broader point here, which is we still have to analyze the explanation of review. Well, there is one other problem that the defendants point to, and that is the fact that there was something like a nine-month wait when things are supposed to be done in 180 days. Was there an explanation for that? I can explain exactly why, Your Honor, and I would say two things. One, I agree with Your Honor that there is a 180-day appeal clock, but our whole argument is that clock does not start ticking... Until there is sufficient information. Correct. But I'm just wondering, how does this get going? Who first says, wait a minute, whose responsibility is it to say, wait a minute, this isn't enough information, this could be a coding error? I mean, is the patient supposed to be able to pick up on that and... Well, I'll say two things, Your Honor. First, I think the intent of Section 1133 is that an explanation of review should allow the patient or someone to be able to pick up on it. Now, why the delay in this particular case? I can answer that. In this case, Spectrum is a party to a network agreement, and as part of that process, when a claim goes out the door to an ordinary billing process, there is, as Mr. Dwyer in his brief points out, there's electronic correspondence between the parties, and that electronic correspondence, there was actually improper coding of the response by the TPA, or the third-party administrator, who instead of categorizing it in the coding as an experimental investigational denial, categorized it as an adjustment. And so it didn't initially catch the screeners. In Spectrum's... In a post-payment audit, several months down the road, Spectrum reviewed it and then found, oh, I see, okay, this was an improper coding adjustment, and actually it was an experimental denial. That's why the original delay from September through April of the following year. Fundamentally, though, I say that to the court to answer your question, but I still think it doesn't change the fundamental issue, which is their initial EOR is either compliant or it isn't. And if it's not, then the appeal clock doesn't start running. Unless the court has any questions. Thank you. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Scott Dwyer here on behalf of Tooling Systems, and with me today is my partner, Dan Voxop. It's our position that the court here should affirm the district court's determination that the Explanation of Benefits EOB form complied with ERISA. And furthermore, that Spectrum was untimely in its appeal. We're also asking that the court reverse, however, the district court's determination as the denial of our attorney's fees as we should have been given an opportunity to file a motion for attorney fees under Rule 54. I would note, in terms of the standard review, although it's generally de novo, that I think when it comes to the exhaustion requirement, there is Sixth Circuit case law that says that the Sixth Circuit should review it on an abuse of discretion standard. I cite Farm Bureau Insurance of Michigan v. Blue Cross of Blue Shield at 655 F. 3rd, 410, a 2016 case. In terms of the EOB, it's our view that it indeed complied with the requirements of ERISA. It's supposed to indicate that the claim has been denied and denied in such a way that the parties understand what's going on here. One of the things that's left out here is that Spectrum has taken an assignment from Mr. Gruszka and agreed to pursue any payment of claims on behalf of Mr. Gruszka. But who is it that's got to get enough information to know that they want to appeal the ruling? In this case, Spectrum, since they're the ones that took over the assignment. Well, they took over the assignment, but who initially is supposed to get enough? Mr. Gruszka, and he clearly knows on the EOB that it's not being paid. And it says that. But the question is not whether it's being paid. It's why it's not being paid. That's right. And under ERISA and the regulations, it says you have to state the specific reason for the denial. You have to reference the plan provision and a description of the review procedures. On the form that was mailed to Mr. Gruszka, was mailed to Spectrum, was electronically sent to Spectrum, it says, hi, it looks like this service, medicine, or supply appears to be experimental investigation as defined by the plan. At that point, you set forth the procedures. You can write a letter saying, hey, I need more information to understand what's going on. Okay, somebody did do that, I gather. He did that after the appeal time had run. He waited seven, actually Spectrum waited seven months to do that. But they weren't appealing, they were simply asking for more. Right, but at that point, the appeal period had run. So they're asking for information when it's already been denied for over six months. They waited for seven months to file a request for information. At that point, the claims administrator said, you're late. They didn't even file an appeal for another, for a total of 13 months. And the reason why is, I think it was during the hearing that came out in October, is that basically we don't read our mail. We didn't notice that we didn't get paid. Well, it seems that there were multiple problems with timeliness. Your initial response was late. That's correct. Yes, correct. But because they didn't go straight off to court, they waived that and agreed us to go through the administrative process, and it got reviewed and it got denied. Here's my concern. The original letter that told him that it was not covered said that this appears to be experimental or investigational, as defined by the plan. Correct. The plan has what, six categories in which that would be determined? And there's no specificity in this at all. So how would someone mount a claim if you have six divergent ways of being experimental or investigational, and the EOB fails to tell you what portion of the plan is being violated? A couple things. One is the Sixth Circuit has ruled that the substantial compliance test, and there's other case law that says they don't have to give the reason behind the reasoning or the interpretive test. Yes, but my problem is I'm not looking for the reason behind the reason. I'm asking what the reason is. Right. If it's a plan issue, if you had said because it's investigational as told us by the hospital, then a plan participant would look at that and say, well, this is what the hospital says. I'm going to call them. But when it says as per the plan, then this individual has no idea what of those categories in the plan has been violated. So how would that be a compliance? At that point, you're allowed to request additional information that's set forth in the EOB in detail. You can ask for additional information. You can ask for the scientific information on it. I understand that you don't have to provide the scientific. Exactly. It's clear in the law. But you have to provide the first reason. And I'm struggling with how this would do that to a participant, particularly since it says the explanation is for a service, a medicine, or a supply. And when I looked at the bill that was sent, it is pages and pages of information. And the plan participant would not even know if it's one of the service categories, one of the medicine categories, or one of the supply categories. Mr. Gruska and the hospital get this. He looks at the declination of not paying the $270,000. At that point, you write a letter and say, why was this not being paid? Can I get more information out of this? And you can do that. So your position would be substantial compliance with the first part would be simply a no, our plan doesn't cover it. Our plan doesn't cover it because it appears to be experimental and investigational, as frankly defined by the person, Spectrum in this case, who submitted the bill. My problem with that is that the dollar amount of the denial does not match the dollar amount of the improper coding by a pretty good chunk of change. So if you're a participant and you're looking at all of those codes, how would you know which had been denied? You know, if you had said every code that's R624 is denied as investigational, and it all totaled up, that would tell one thing. But when you can't even make that comparable analysis, I'm struggling with how that lets a plan participant even understand what this is about. When you look at the EOB, the $273,000 is being completely denied. And so the whole kiboodle is being denied. But not all of the, that's not the dollar figure of everything that was coded R624. On this particular entry, the one particular item, R624, $273,000, the adjustment was, it said experimental as defined in the plan, and that was not being paid. The amount allowed was zero. That's on page ID one. Yeah, but it doesn't match the dollar figures. Well, again. Part of it is we are talking past each other because we don't understand what has been denied. And that's where my struggle is. So the bottom line of this is, you started late. They coded wrong. You responded late. They responded later than that and continued in the process. And so nobody's looking at whether this is actually covered by the plan or not because your position is they're outside our six-month time frame to appeal. We responded properly to them when they made the inquiry. No, I'm talking about the initial. Your initial, you have a time frame within which you're supposed to send the EOB and you didn't do that. That's correct. And the case law says that unless they file a lawsuit, they're not pursuing a lawsuit, waives the right to complain that the administrative remedies have somehow not been. So the bottom line is nobody's, you are not looking at whether your plan would have covered this if it had been timely. We didn't, the claims administrator never got to that point. But what I hear out of Mr. Gavin is in fact a good chunk of the $273,000 is in fact experimental and or investigational. That's what I heard. Well, I think he can explain that. I don't think that was his position. I think he was saying it looked, it was improperly coded because of a new procedure but the device itself is unquestionably not experimental. As I understand it, at the district court level, he indicated that we're not pursuing approximately $73,000. Approximately? $73,000. $73,000 but the remainder is being pursued. That's correct. That's my understanding. What is your best case for saying that this is substantial compliance? Again, my best case for saying it is in fact we reference that we don't pay it. We identify that it appears to be experimental or investigational as defined by the plan and it went out. And that triggers the right for Mr. Gruska and or in this case Spectrum who has the assignment to make an inquiry. And what case law tells you that a general it appears that this is excluded as investigational under the plan without any specification of the plan provision is adequate to be substantial compliance? I think the cases that instruct that are, it's not a Sixth Circuit case but it's Gallo v. Amco Corporation. What do you have in the Sixth Circuit? The case law that I have is the Kent v. United Life in the Marks cases and the Thompson case that we sent in our brief. But Kent is actually a supplemental explanation of Vanderklok and Clark, is it not? Correct, but it expounded on the fact that this is substantial compliance. In contrast, in Vanderklok, in fact, in that case, what the court was focusing on was the circular reason. You're not permanently disabled because you're not permanently disabled. But in fact, in this case, we said it's experimental and investigational as defined by the plan because of how it was coded. And similarly, I guess in the Clark case that they cite, in the Clark case they never made any reference to the plan at all. In this thing, we say, hey, it's as defined in the plan. Well, the. Which the beneficiary has an opportunity to get a hold of. Perhaps Clark is concerned about the specificity. Yes. Of the reference to the plan, which in your case doesn't exist. Well, I submit that that's what the inquiry is all about, is that if you have a question, you can get more specificity. And they had an opportunity to do that. Again, Spectrum had the opportunity to do that. And they did it. They did it late. Well, everybody's a little late through this thing. And if you're talking about more than a quarter million dollars for something that turns out not to be experimental, it seems to me that in good faith you pay up. You have some sort of fiduciary duty to the member of your plan, don't you? Well, and also Spectrum has a fiduciary duty when they took the assignment to pursue it. And they didn't. And I'm not sure why. The reason you have the time limitations of 180 days, frankly, are the policy reasons. Things change. In this case, we got rid of our stop loss policy. That's what the critical importance of the 180 days is. So we're going to be covered for our claims. Right now, we're not covered for our claims. Okay? That's going to come straight out of cash. It's not an insurable loss at this point. And that's, frankly, unfair to my client. Well, these are difficult settings. I would recognize that. And there are reasons for the time frames. But there are also reasons for determining what cases may be pending or being investigated when you make those choices. So I don't think we can be governed by that. What we've got to be governed by is what is substantial compliance. I understand that. And I think that this satisfied the substantial compliance. And back to the attorney's fees, if I could spend a minute on that. Yes. I think the court erred in not giving us an opportunity to file a motion for our attorney's fees. I believe the factors are in our favor in that case. We did win at the lower level. And Spectrum's defense is it doesn't read its mail. That's what it said on the record. Basically, we relied upon the electronic. We didn't realize we hadn't been paid. And that's their coding. They made the coding mistake. Okay? Not my client. Not Mr. Gruszka. Spectrum made the coding mistake. Okay? And we had a right to rely upon that in making our initial determination whether or not it was covered by the plan. I think that's only fair. In terms of whether they've got the ability to pay, clearly they've got the ability to pay. Frankly, it didn't miss $200,000 for almost a year, it appears. And frankly, it's going to encourage companies like Spectrum, hospitals like Spectrum, if you get an assignment to be due diligent in pursuing it. Again, I think going back to the EOB, I think it does substantially comply. The idea is to put folks on notice that your claim's not being paid and you've got a process to get more information if you want it. And Spectrum's in the business of doing that. Spectrum does this all the time. And Mr. Gruszka probably had the right to rely upon them. They're not going to sue Mr. Gruszka because if he does, he's going to have a claim back against him for negligence for not handling the claim appropriately. So we did everything that was appropriate. We relied upon what Spectrum gave us. It was their coding issue. We denied it based upon it. We told them it wasn't getting paid. If you get a code that's completely off the wall, are you entitled to rely on it? Why is it off the wall? Well, I'm just asking you the extent of your argument. You think there is nothing that the fund has to do to determine, pursuant to its own provisions, why that coding, where that coding fits within its six categories? Understand that claims administrators get codes all the time in which it's experimental or investigation. And is there automatic response in that plan to just say, we deny it because it's coded this way? Yes. Actually, it's happened to me several times for what it's worth. We've got a lot of parties that need to be looking at their procedures here. That's concerning, too. But I understand your argument. I understand that. We thank you. Any more questions? No further questions? Thank you very much for your time. I appreciate it. Thank you. Thank you. I'll be very brief. Well, it's one key question. Everybody's made a mess of this, and who's going to bear the responsibility? Your Honor, I think that with respect to bearing the responsibility, it has to begin and end with what the statute requires. We're guided by what 1133 dictates, and that means that they have to give the specific reasons. The clock starts when they do. They didn't hear. This Court has been very clear in Vanderklark, in Clark, in a number of cases, holding that you need more than a single sentence vague denial than what they provided here. That is on them. As you rightly pointed out, they're not entitled to rely on a code. Granted that Spectrum should not have screwed the code up. It made it more difficult. But they're not entitled under their plan to rely on it. The plan is very clear about what they're entitled to rely on, and they can walk through their exclusion and determine whether or not it applies. They didn't do that here. That's on them, not on my client. Thank you both. Thank you, Your Honor. Thank you. I appreciate it. Our remaining cases are not for oral argument, and we will take them under advisement. You may adjourn the Court.